UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

SARAH GRISSOM,
Individually and on behalf of her minor children, G.G., H.G., W.G., and J.G.,
Plaintiff,

v.

BALDWIN COUNTY, ALABAMA,
JUDGE WILLIAM SCULLY, in his official capacity,
JOSHUA GENE KESLING,
OLIVIA NEWTON,
KESLING LAW,
JASON KEITH SPRY, in his personal and official capacity as GAL,
DR. JACK CARNEY,
JOHN T. GRISSOM,
ORANGE BEACH POLICE DEPARTMENT,
CITY OF ORANGE BEACH,
BALDWIN COUNTY SHERIFF'S OFFICE,
BALDWIN COUNTY SHERIFF ANTHONY LOWERY,
BALDWIN COUNTY ALABAMA DEPARTMENT OF HUMAN SERVICES,
STATE of ALABAMA DEPARTMENT OF HUMAN SERVICES,
LAURIE HOYT, in her official capacity as assistant attorney general for Alabama DHR,
Defendants.

Case No.: 1:25-cv-00895-RTG

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EMERGENCY
MOTION FOR TEMPORARY RESTRAINING ORDER (TRO)

Plaintiff, Sarah Grissom, individually and on behalf of her minor children, brings this action

against the above-named Defendants for violations of her constitutional and federal statutory

rights. Plaintiff seeks declaratory and injunctive relief, along with an emergency Temporary

Restraining Order (TRO) to prevent ongoing irreparable harm resulting from Defendants'

unlawful actions.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EMERGENCY

MOTION FOR TEMPORARY RESTRAINING ORDER (TRO)

I.    INTRODUCTION

Plaintiff Sarah Grissom, individually and on behalf of her minor children, G.G., H.G., W.G., and J.G., brings this civil rights action under 42 U.S.C. § 1983 and related federal statutes to halt an ongoing constitutional emergency orchestrated by state actors in Baldwin County, Alabama. Through unlawful court orders, fabricated charges, and retaliatory enforcement actions, Defendants have stripped Plaintiff of her parental rights, endangered her children, and violated the most basic principles of due process and equal protection.

This case centers on a state-created danger. Under color of law, Baldwin County officials have knowingly exposed minor children to psychological and physical harm at the hands of a known abuser while actively suppressing the safe parent's efforts to protect them, and retaliating against her for the same. This campaign of abuse—enabled and enforced through unconstitutional orders and State usurpation of power—has placed Plaintiff and her children in immediate, life-threatening danger.

Instead of acting as neutral arbiters, Baldwin County's judiciary and legal actors have engaged in targeted retaliation and procedural manipulation to silence Plaintiff and punish her for speaking out. Acting under the guise of legal authority, Defendants have conspired to deprive Plaintiff of her constitutional rights by issuing void orders without jurisdiction, enforcing fraudulent contempt rulings, and coercing compliance with unlawful mandates. The Baldwin County judiciary has systematically obstructed Plaintiff's access to legal recourse, denied her the right to be heard, and engaged in a deliberate campaign to strip her of parental authority through unconstitutional rulings and retaliatory litigation tactics.

1

This action is brought under 42 U.S.C. § 1983, the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the U.S. Constitution, the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), the Violence Against Women Act (VAWA), the Child Abuse Prevention and Treatment Act (CAPTA), the Americans with Disabilities Act (ADA), and the Family Violence Prevention and Services Act (FVPSA). Defendants' conduct constitutes a gross violation of due process and equal protection, as well as an unprecedented overreach that has turned the Baldwin County's judiciary into an instrument of state-sanctioned coercion and abuse. This Court is the only remaining forum where Plaintiff and her children may seek meaningful protection and constitutional relief. Plaintiff now asks this Court to declare Baldwin County's actions unlawful, enjoin further enforcement of void and coercive orders, and intervene to prevent further irreparable harm to herself and her children. The stakes could not be higher—continued inaction will result not only in the violation of federal law but in irreversible damage to vulnerable children and the safe parent trying to protect them.

Due to the ongoing emergency and imminent risk of irreparable harm, Plaintiff has filed this complaint to ensure the Court may timely rule on pending emergency motions. Additional exhibits, parties, and causes of action will be submitted by amendment pursuant to Rule 15.

## II.    IMMEDIATE RELIEF REQUESTED

Plaintiff seeks the following emergency relief:

1. A declaration that Baldwin County, Alabama has lost jurisdiction over all custody, enforcement, and contempt matters involving Plaintiff and her minor children due to ongoing violations of federal law, including the U.S. Constitution, the Uniform Child

2

Custody Jurisdiction and Enforcement Act (UCCJEA), CAPTA, and the Family Violence Prevention Services Act (FVPSA).

2. A temporary stay of all Baldwin County proceedings involving Plaintiff or her children, including custody enforcement, psychological evaluations, contempt findings, arrest warrants, hearings, and visitation orders, pending adjudication of this federal action.

3. A temporary restraining order and preliminary injunction enjoining Defendants from enforcing any orders, sanctions, evaluations, or custody actions entered without jurisdiction or due process, and prohibiting further arrests, detentions, financial penalties, or retaliatory legal action against Plaintiff or her children.

4. Vacatur of all Baldwin County orders issued after the loss of jurisdiction or in violation of Plaintiff's constitutional rights.

5. A permanent injunction prohibiting Defendants from asserting jurisdiction or continuing legal proceedings against Plaintiff or her children in contravention of federal law, and prohibiting any further interference, surveillance, or retaliation pending resolution of this matter.

6. An order requiring the immediate return of any funds paid under unlawful arrest or contempt proceedings, including bond payments and coercive fees, as restitution for unconstitutional detention and financial coercion.

7. Any further relief this Court deems just and necessary to prevent ongoing constitutional violations and irreparable harm to Plaintiff and her minor children.

8. Plaintiff reserves the right to seek additional relief and compensatory damages.

III.    JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. § 1331, as Plaintiff raises claims under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), the Child Abuse Prevention and Treatment Act (CAPTA), the Family Violence Prevention and Services Act (FVPSA), the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), and the Violence Against Women Act (VAWA). This Court has jurisdiction under 28 U.S.C. § 1343 because Defendants, acting under color of law, have deprived Plaintiff of constitutional rights under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments.

Venue is proper under 28 U.S.C. § 1391(b) because Plaintiff has a significant legal nexus to Colorado, where she resided from 2013-2017, where two minor children were born, and where key legal contracts were drafted and notarized. Baldwin County's obstruction of Plaintiff's federally protected right to relocate for safety, combined with its failure to enforce the agreement executed in Colorado, further supports venue in this jurisdiction. Baldwin County's refusal to recognize or enforce this contract further establishes Colorado's jurisdictional interest in ensuring the enforcement of legally executed agreements within its borders. Baldwin County's unlawful actions, systemic retaliation, and refusal to acknowledge federal protections have foreclosed all state remedies, supporting emergency relief in a neutral and impartial jurisdiction.

State remedies have been rendered futile by the ongoing pattern of judicial retaliation, denial of due process, and systemic bias in Baldwin County. Plaintiff's motions invoking constitutional and statutory protections have been repeatedly denied without hearing or justification, while retaliatory actions have intensified. Alabama's continued assertion of jurisdiction in violation of federal law, combined with its refusal to enforce protective provisions of the UCCJEA, CAPTA, and VAWA, has foreclosed all meaningful state relief, and continued attempts to secure relief from the state further endanger Plaintiff and the minor children. As a

4

result, Plaintiff seeks immediate federal intervention as the only available forum capable of preventing further irreparable harm and constitutional deprivation.

## INCORPORATION BY REFERENCE

Plaintiff hereby incorporates by reference all factual allegations, exhibits, and legal arguments contained in the Emergency Motion for Temporary Restraining Order filed on March 19, 2025, which is docketed in this action. These materials are submitted in support of the claims asserted herein and are part of the record for all purposes. Plaintiff expressly reserves the right to amend this Complaint to seek compensatory and punitive damages against all Defendants in their individual capacities for the constitutional violations, physical and emotional harm, and financial losses sustained as a result of Defendants' unlawful actions.

IV.  PARTIES

1.  Plaintiff Sarah Grissom is an individual and the natural mother of four minor children, G.G., H.G., W.G., and J.G. She is a survivor of domestic violence and has suffered severe constitutional violations at the hands of Baldwin County, Alabama, and its agents. She brings this action on behalf of herself and her children to halt ongoing harm, constitutional violations, and jurisdictional overreach by Defendants. Plaintiff is a U.S. citizen who resided in Colorado from 2013 to 2017, during which time a legal protective contract central to this case was signed and notarized.

2.  Defendant Judge William Scully, Jr. is a Circuit Judge in Baldwin County, Alabama. At all relevant times, he acted under color of state law and without jurisdiction to deprive Plaintiff of her constitutional rights. His misconduct includes due process violations, judicial retaliation, suppression of child abuse evidence, and ex parte coordination with Defendants Kesling and Spry.

5

3. Defendant Joshua Gene Kesling is an attorney who represented John Grissom and acted in concert with state actors to violate Plaintiff's rights. His conduct includes fraud upon the court, witness tampering in violation of 18 U.S.C. § 1512, obstruction of justice, intimidation of Plaintiff and witnesses, and suppression of domestic violence evidence.

4. Defendant Jason Keith Spry was appointed as Guardian ad Litem in Plaintiff's custody proceedings. Acting under color of law, he violated his legal duties by concealing child abuse disclosures, engaging in ex parte communications, and filing motions outside the scope of his legal authority.

5. Defendant Olivia Newton is an attorney who represented John Grissom and colluded with Defendant Kesling to defame and harass Plaintiff. She filed false pleadings, suppressed abuse evidence, and misused judicial processes to seek retaliatory sanctions and violate Plaintiff's privacy.

6. Defendant Dr. Jack Carney is a psychologist appointed by the Baldwin County court to evaluate Plaintiff and the minor children. Acting under color of law, he engaged in ex parte communications, suppressed child abuse evidence, conspired with other Defendants while operating under undisclosed conflicts of interest, and released private medical records to the court and third parties without proper legal consent or authorization.

7. Defendant John T. Grissom is Plaintiff's ex-husband and a known perpetrator of domestic violence against Plaintiff and the minor children. He has used the legal system to continue this abuse and conspired with Defendants to retaliate against Plaintiff through malicious litigation.

8. Defendant Baldwin County, Alabama is a political subdivision of the State of Alabama, responsible for oversight of the Baldwin County judiciary, sheriff's office, and other

named departments and officials. It is liable for the unconstitutional customs, policies, and practices described herein.

9. Defendant Kesling Law is a law firm based in Alabama and the employer of Defendants Joshua Gene Kesling and Olivia Newton, as well as several paralegals. At all relevant times, Kesling Law acted under color of state law and in conspiracy with Baldwin County officials to violate Plaintiff's rights.

10. Defendant Orange Beach Police Department is a municipal law enforcement agency that acted under color of state law to deprive Plaintiff of her constitutional rights, including through unlawful arrest and collaboration with other state actors.

11. Defendant City of Orange Beach is a municipality within Baldwin County, Alabama, and is liable under Monell for the policies, customs, and practices that facilitated or permitted the unconstitutional acts described herein.

12. Defendant Baldwin County Sheriff's Office is a law enforcement agency acting under color of law at all relevant times. Its officers participated in the unlawful arrest, detention, and retaliation against Plaintiff.

13. Defendant Sheriff Anthony Lowery is the elected sheriff of Baldwin County. At all relevant times, he acted under color of law to facilitate and enforce unconstitutional actions, including unlawful arrests and detentions of Plaintiff.

14. Defendant Baldwin County Department of Human Services is a county agency responsible for child welfare and protective services. It acted under color of law in participating in custody interference, suppression of abuse reports, and collaboration with other Defendants.

15. Defendant State of Alabama Department of Human Resources (DHR) is the state agency responsible for child welfare and protective services. Through its policies, agents, and omissions, it facilitated the constitutional violations described herein.

16. Defendant Laurie Hoyt is an Assistant Attorney General for the Alabama Department of Human Resources. At all relevant times, she acted under color of state law in her official capacity, and participated in the suppression of abuse evidence, jurisdictional overreach, and retaliatory legal action.

V.    FACTUAL BACKGROUND

1.  June 13, 2021: After years of abuse, Defendant Grissom strangled Plaintiff in front of the minor children. G.G. intervened and called the police. Instead of protecting the victim, Orange Beach Police arrested Plaintiff based on Grissom's false claims. He later admitted in text messages that the arrest was a deliberate act of retaliation, and was later arrested for false reporting to law enforcement, but was not charged with the physical assault and strangulation of Plaintiff.

2.  October 13, 2021: Plaintiff filed for a Protection from Abuse (PFA) Order. On October 14, Grissom illegally accessed Plaintiff's home during an active Protection from Abuse order and stole Plaintiff's notarized post-nuptial agreement. On October 15, Defendant Grissom, by and through Defendant Kesling, filed for divorce, suppressing the legal document that protected Plaintiff, weaponizing litigation to control and punish her.

3.  December 14, 2021: At a PFA hearing, Kesling ambushed Plaintiff with an oral motion for drug testing, which Judge Scully granted without notice, evidence, or a hearing. The order explicitly stated it did not comply with Rule 35's legal requirements yet was issued

8

anyway. The PFA petition was dismissed without Plaintiff being allowed to present her case.

4. December 15, 2021: Plaintiff filed another PFA petition on police advice, submitting evidence of stalking, abuse, and corruption.

5. On December 30, 2021, Plaintiff submitted a significant amount of evidence to Kesling through discovery. The evidence showed John Grissom committing acts of domestic violence against Plaintiff and the minor children for years.

6. January 5-6, 2022: Within days of receiving Plaintiff's discovery and following her PFA petition, Kesling filed motions for a Guardian ad Litem (GAL), a motion to move the GAL hearing to Plaintiff's scheduled PFA hearing, and a motion for more invasive drug testing and psychological evaluation of Plaintiff without evidence. Kesling also filed motions requesting custody of the children and use of Plaintiff's home during pendency.

7. February 1, 2022: Plaintiff's second PFA petition was dismissed without a proper hearing after Judge Scully refused to allow Plaintiff or her counsel the ability to argue or present evidence. Kesling's motions for psych evaluation, GAL appointment, and more invasive drug testing of Plaintiff were granted despite Plaintiff's objections and without factual evidence.

8. May 2022: A social media page was created that began exposing Baldwin County's corruption and failure to protect Plaintiff and the minor children, and exposed John Grissom's acts of abuse.

9. In November 2022, Kesling filed a gag order attempting to shut the social media page down, alleging it was operated by Plaintiff and telling Judge Scully that she was saying bad things about the officials in Baldwin County, including Judge Scully. Kesling

admitted to viewing all of the posts in order to protect John Grissom, who was under a no

contact order with strict instructions to "stay out of her accounts". Despite stating he

viewed the content, Kesling continued to suppress and deny the abuse and illegal acts

conducted by his client.

10. On February 23, 2023 Judge Scully entered a divorce decree barring Plaintiff for

relocation exemptions, stating John Grissom was "not a continuing threat" to Plaintiff

and the children, disregarding the evidence and testimony submitted during pendency.

11. On March 22, 2023, Plaintiff's former attorney filed a Rule 59 motion for

reconsideration, arguing that the decree constituted an abuse of discretion and failed to

reflect the overwhelming evidence of danger to Plaintiff and the children. The motion

specifically noted the absence of safety provisions and asserted that the decree exposed

Plaintiff and the children to imminent and irreparable harm.

12. In or around May 2023, Judge Scully engaged in direct, ex parte communications with

attorneys involved in Plaintiff's matter. These communications occurred outside the

presence of Plaintiff and without her consent. Judge Scully has a well-documented

pattern of holding such meetings in the judicial hallway prior to hearings, permitting

attorneys to privately discuss pending matters. Plaintiff was unrepresented during much

of the relevant period and was not included in these pre-hearing conversations.

13. In July 2023, Plaintiff's former counsel filed a Rule Nisi motion in the Circuit Court of

Baldwin County seeking protective intervention based on ongoing threats to Plaintiff and

the children's safety. The motion specifically warned that failure to act would result in

irreparable harm.

14. On July 18, 2023, Plaintiff filed a formal Notice of Intent to Relocate, citing the necessity of relocation due to continuing domestic violence, threats, and imminent harm to herself and the children. Defendant Grissom filed an objection to the relocation but failed to submit any supporting evidence of potential harm to the children.

15. Under Alabama statutory law, once the custodial parent demonstrates that the proposed relocation is in the best interest of the children, the burden shifts to the objecting parent to demonstrate that the move would be detrimental. Despite this clear framework, Judge Scully permitted repeated continuances, delayed hearings, and prioritized unrelated or non-urgent matters, effectively halting Plaintiff's relocation for over 20 months. As of the date of this filing, Defendant Grissom has never been required to substantiate his objection with evidence.

16. On October 4, 2023, Defendant Grissom filed a lawsuit against Plaintiff based upon her reporting acts of domestic violence, asserting her rights, and the posts from the social media page which included direct evidence of Grissom harming Plaintiff and the kids.

17. Also in October 2023, Kesling and Grissom filed a motion for appointment of a Real Estate Commissioner to govern the sale of Plaintiff's property to strip Plaintiff of her property rights. Judge Scully initially granted this motion.

18. In January, 2024, minor child G.G. disclosed Defendant John Grissom had put her in a chokehold during visitation, causing discomfort and fear. DHR began an investigation. Grissom, Kesling, and Newton retaliated by fling two identical motions for contempt on January 17 and January 18, 2024.

19. On February 23, 2024, Plaintiff filed a Rule 60(b) motion to vacate all orders due to fraud, misconduct, and constitutional violations. This filing triggered an automatic stay,

stripping Baldwin County of jurisdiction. Scully failed to adjudicate this motion, setting the motion for hearing at a "final trial."

20. On March 12, 2024, Judge Scully ordered Plaintiff to sell her home by April 1 or face a court-appointed Real Estate Commissioner.

21. At the same March 12, 2024 hearing, Plaintiff informed the Court of grave safety concerns following minor child G.G.'s disclosure of choking abuse. Judge Scully responded by saying "just because you say it doesn't make it true". He refused to implement safety provisions and threatened to fine Plaintiff $100 per day if the children missed visitation with Grissom.

22. Due to the imminent threat of physical harm and serious emotional harm affecting the children, Plaintiff filed a third PFA petition immediately following the hearing. Plaintiff submitted 137 pages of evidence supporting the gravity of the situation following Judge Scully's statement discrediting Plaintiff's account. Scully set the hearing 35 days out and denied all temporary relief despite statutory laws requiring hearing within 2 weeks. The children were forced to attend visitation without safety measures.

23. On April 13, 2024: Grissom was arrested for stalking, further evidencing Judge Scully's failure to protect Plaintiff and showing the need for a PFA. However, Judge Scully blamed Plaintiff for the ongoing stalking and harassment, called her exhibits "crazy stuff", and dismissed Plaintiff's PFA petition.

24. On April 24, 2024, Grissom and Tolley filed a TRO against Plaintiff in retaliation for Plaintiff's attempts to secure safety and assert her rights. They later supplemented the TRO filing with fabricated and fraudulently misrepresented evidence.

25. On May 1, 2024, Kesling and Newton filed eight motions, including modification of child custody order without overcoming rebuttable presumption, Rule Nisi, Litiagtion Accountability, invasive 19 panel drug testing of plaintiff, psychological evaluations of Plaintiff and G.G., appointment of a GAL, contempt proceedings against Plaintiff, and motion to consolidate with Plaintiff's relocation hearing filed 9 months earlier.

26. On July 3, 2024, Kesling, Newton, and Grissom amended their motions for drug testing and psychological evaluation of plaintiff and minor child, submitting them after 3:00PM. Judge Scully allowed these motions to be introduced the following morning at the hearing. He granted to motions and ordered Plaintiff to report immediately for drug testing and to schedule psychological evaluations for herself and minor child with Kesling's chose psychologist, with whom he has personal ties.

27. On June 19, Plaintiff filed a motion to reconsider the psychological evaluations. It was ignored. On July 4, 2024, Plaintiff filed a motion to vacate the unlawful psychological evaluations. It was denied without hearing or justification. On August 15, 2024, Plaintiff filed a motion for permission to appeal the interlocutory orders for psychological evaluations. It was denied without hearing or justification.

28. Despite Judge Scully telling Plaintiff to schedule the evaluations, Kesling and Grissom scheduled them without consulting with her. Plaintiff rescheduled the appointments due to being out of the state on the day they selected. On July 15, 2024, Kesling again filed a motion for contempt, alleging Plaintiff was defying orders and trying to delay. Judge Scully threatened to hold Plaintiff in contempt if she failed to report to the evaluation with minor child G.G.

29. On August 27 and September 4, 2024, Plaintiff and G.G. reported for the evaluations with Dr. Jack Carney, against their will. Plaintiff was not allowed to accompany the minor child for her questioning and evaluation. Dr. Carney later testified that G.G. disclosed incidents of abuse she witnessed and endured. Carney failed to report these disclosures to DHR, and Def. Grissom was informed of what G.G. had disclosed.

30. On October 17 and 18, 2024, Plaintiff and G.G. filed harassment reports against Defendant Grissom due to his extreme public behavior. He verbally accosted them at a soccer match for eight minutes, loudly declaring "there is a reason you are court ordered to psychological evaluation" and "You are in violation of a restraining order", despite the fact Plaintiff and G.G. remained seated, not engaging with Grissom.

31. Following the public display, John Grissom continued to harass G.G., emotionally abusing her until she was crying. Def. Grissom taunted G.G. with the results from the psychological evaluations. G.G. reported the abuse to her school counselor and the Student Resource officer, begging them not to make her go to visitation with John Grissom, and Plaintiff was called to the school due to the child's uncharacteristic distress.

32. On November 2, 2024, Defendants retaliated by filing contempt charges against Plaintiff for reporting the harassment, alleging she was the instigator. Plaintiff filed a report with Gulf Shores Police Department following the harassment. The officer transcribed the video of the altercation, which clearly showed Grissom as the assailant.

33. On October 24, 2024, Plaintiff filed for Judge Scully's recusal citing bias and misconduct, as well as the ignored Rule 60(b), and failure to protect. On November 4, 2024, Judge Scully denied Plaintiff's recusal motion without justification or a hearing, refusing to properly adjudicate the motion.

34. On November 5, 2024, Guardian ad Litem Jason Spry filed a motion requesting public funding for psychological evaluations with Dr. Jack Carney. The motion falsely asserted that such public funding was appropriate, despite the absence of any active dependency action, abuse or neglect investigation, or open Department of Human Resources (DHR) case involving the children. On November 8, 2024, Judge Scully granted the request and authorized DHR to fund and facilitate the scheduling of evaluations.

35. Around this time, Plaintiff discovered that GAL Jason Spry had been improperly listed in the case docket as a party-litigant (code L001), a designation not permitted under Alabama law in private custody proceedings absent a dependency action.

36. Acting under color of this improper designation, Spry filed multiple substantive motions as if he were a legal party, including: initiating DHR involvement without statutory authority, filing a motion to show cause alleging Plaintiff owed him fees, a contempt motion that led to Plaintiff's arrest, and a motion compelling the children to undergo psychological evaluations with Dr. Carney under DHR's guardianship—all without lawful standing or jurisdiction.

37. On November 8, 2024, attorney Kesling filed a motion requesting that Defendant Grissom receive additional parenting time with G.G., already having communicated with DHR to coerce a third psychological evaluation with Dr. Carney, scheduled by DHR for three days later. Dr. Carney had never reached out to plaintiff, the custodial parent, to schedule any additional evaluation with the child.

38. Kesling's motion introduced selectively edited exhibits and falsely alleged that Plaintiff had previously "interfered" with evaluations. Judge Scully granted the motion without

hearing or notice, denying Plaintiff the opportunity to object or exercise her parental rights.

39. On November 18, 2024, G.G. once again disclosed abuse to Carney.

40. On November 26, 2024, GAL Spry filed a motion to show cause against Plaintiff regarding GAL fees. In his motion he alleged Plaintiff was responsible for his "significant balance".

41. On November 27, 2024, Kesling filed for emergency custody of all minor children based on Carney's evaluation, despite G.G. reporting she disclosed serious acts of family violence to him during the evaluation. Attached to the motion was an exhibit, showing an ex-parte email or letter sent from Dr. Carney wherein he states he released the evaluation reports to the court and third parties.

42. On November 30, 2024 W.G. sustained contusions and laceration to his eye following a physical act of abuse perpetrated by John Grissom. Plaintiff reported the incident to GAL Spry on December 2, 2024.

43. On December 17, 2024, without prior notice and outside a designated evidentiary setting, Dr. Jack Carney was permitted to testify in open court regarding the psychological evaluations of both Plaintiff and her minor child, G.G. Plaintiff had not been provided with copies of the reports, had not deposed Carney, had not waived privilege under Alabama Rule of Civil Procedure 25, and had never consented to the release or use of the evaluations. The court's original order authorizing the evaluations did not include any directive permitting release of the reports to the court, counsel, or third parties.

44. During his testimony, Carney stated that G.G. disclosed witnessing Defendant Grissom on top of Plaintiff with his hands around her neck and Plaintiff's arms pinned beneath her

— an act she described as "choking her out." Carney dismissed the disclosure as vague and testified that he "challenged her recall" and asked her to "think about the act in a different way." He further testified that he asked G.G. why her mother had gone to jail, implying Plaintiff's culpability. When G.G. refused to recant her account, Carney concluded she was "delusional" and "relying on her mother's version of events," despite never evaluating or interviewing Plaintiff.

45. Carney further testified that G.G. was "influenced by Wiccan practices and beliefs," which he attributed to Plaintiff without basis, and claimed that the "only cure" was a full reversal of custody to Defendant Grissom. Carney made this recommendation despite having heard G.G.'s prior disclosures of strangulation and abuse by Defendant Grissom, which occurred just months earlier.

46. Carney also introduced into evidence a selectively edited surveillance video from his waiting room. Plaintiff and G.G. had not been informed that they were being recorded and had not consented to surveillance. The video was limited to a segment in which Plaintiff referenced not missing work and G.G. not missing school. When Plaintiff objected and requested the full recording, Carney stated he had brought only the "most relevant" excerpt, omitting the broader context.

47. On December 17, 2024, Judge Scully granted the motion to show cause despite Spry failing to introduce any argument or evidence that Plaintiff could pay the fees or that his appointment or fees were valid.

48. On January 27, 2025, Plaintiff filed a motion disputing the validity of Guardian ad Litem Jason Spry's fees, the legality of his appointment, and requesting judicial review of systemic failures in the custody proceedings.

49. On February 3, 2025, at 8:55 p.m., Spry filed a motion for contempt against Plaintiff, alleging willful nonpayment of disputed GAL fees and seeking to hold Plaintiff responsible for the full amount, including the portion assigned to Defendant Grissom. The motion was not supported by evidence or legal authority, and was filed without jurisdiction, as GALs lack standing to file motions in private custody matters.

50. The following morning, on February 4, 2025, Spry's motion for contempt was introduced at a hearing despite not being scheduled for hearing at all. Plaintiff was not present due to venue confusion, as the hearing was set at a courthouse the parties had never reported to for hearings. Judge Scully allowed the motion to be heard, violating notice and fair hearing requirements. He then denied Plaintiff's motion to stay the fees and ordered an alias warrant for her arrest with a $1,500 cash bond.

51. On February 6, 2025, Judge Scully issued a civil alias warrant. The warrant failed to specify a charge and wasn't' supported by affidavit or probable cause.

52. On February 7, 2025, Plaintiff filed a motion to vacate the warrant and contempt, citing lack of jurisdiction and due process violations. One hour after filing, Judge Scully filed the Alias Warrant on Alafile, making it public. On February 11, 2025, Judge Scully denied Plaintiff's motion to vacate without hearing or justification.

53. On February 11, 2025, at 5:34 p.m., attorney Joshua Kesling filed a motion for "special order" requesting that Defendant Grissom be granted additional parenting time to take the minor children to psychological evaluations with Dr. Jack Carney. No Rule 35 motion was filed, and no hearing was held. The record contains no valid order authorizing the evaluations. The timing of the motion followed shortly after Plaintiff's son, W.G.,

disclosed abuse by Defendant Grissom, just as the previous motion for GG's evaluation followed her disclosure of abuse.

54. On February 12, 2025, at 9:04 a.m., Judge Scully granted the requested additional parenting time and ordered the boys to attend psychological evaluations. At 11:00 a.m. that same day, Plaintiff filed an objection to the evaluations, noting that no valid Rule 35 motion or hearing had been conducted. The objection was not acknowledged or addressed by the court.

55. On February 19, 2025, the Alabama Department of Human Resources (DHR) contacted Plaintiff to request two separate in-person meetings at their offices in Robertsdale. Plaintiff had submitted multiple complaints about Defendant Grissom to DHR in prior years, but no such meetings had ever been requested. The contact occurred in the context of an active alias warrant and just days after Plaintiff's objection to the unauthorized psychological evaluations.

56. Also on February 19, 2025, DHR personnel appeared at Plaintiff's residence to meet with the children and discuss the psychological evaluations. They stated they possessed a court order requiring the boys to attend. Plaintiff requested a copy of the order and stated no such hearing had occurred. This marked the fourth time DHR had appeared at Plaintiff's home since December 23, 2024, beginning when the Family Preservation Unit arrived unannounced, stating "the courts want us involved." However, there was still no allegation of abuse against Plaintiff.

57. On or around February 23, 2025, Plaintiff filed an emergency motion to stay the court-ordered psychological evaluations, citing the absence of a valid Rule 35 motion and order

as required by the Alabama Rules of Civil Procedure and declaring the evaluations as traumatic.

58. On February 24, 2025, Plaintiff informed both DHR and Dr. Carney that no lawful order existed and that she did not consent to the evaluations.

59. Following this notice, DHR canceled the scheduled psychological evaluations. No explanation was given, but the cancellation occurred immediately after Plaintiff's legal objection, implicitly acknowledging the evaluations lacked proper legal authority.

60. Within approximately 36 hours of the filing of Plaintiff's emergency motion—and the morning after DHR canceled the appointments—Plaintiff was arrested pursuant to the alias contempt warrant previously issued on February 4, 2025.

Tactical Arrest, Excessive Force, and Retaliatory Detention – February 25–26, 2025

61. On February 25, 2025, two officers from the Orange Beach Police Department (OBPD) approached Plaintiff at her private gym. The officers asked to speak with her but did not state the reason for their approach and then walked back outside. Due to OBPD's history of targeted conduct against her, Plaintiff declined to engage and exited the premises.

62. Plaintiff began walking home peacefully. At no time did OBPD officers announce that a warrant existed or that Plaintiff was under arrest or pursuit. A short time later, Plaintiff observed multiple OBPD vehicles circling her neighborhood and driving aggressively through nearby residential streets. She then noticed an officer on foot attempting to approach her from behind. Fearing for her safety, and still having received no explanation, Plaintiff concealed herself beneath an elevated private residence.

63. While hidden, Plaintiff overheard at least six to eight OBPD officers coordinating a perimeter. Officers were overheard instructing one another to ensure "she doesn't cross the street." Officers engaged with passersby and stated they were searching for "Sarah Grissom." Plaintiff heard two officers standing nearby state: "This homeowner is going to say hell no if we ask to search. Maybe he isn't home. I'm going to search anyway. I don't care." One officer added, "If she went into this house, I'm going to tack on another charge—breaking and entering."

64. Officers approached the homeowner, falsely stated Plaintiff was "running from us" and had "some warrants she needs to deal with," and requested to search the property. The homeowner stated the door was locked. Officers had already checked the door without permission. One officer then asked to search the area beneath the house "so you don't get hurt." The homeowner consented only to a visual check.

65. Officers proceeded to search beneath the residence. One officer located Plaintiff crouched under a blanket and kicked her. The officer shouted "L-T! L-T! Over here!" Multiple officers then rushed in with weapons drawn. Plaintiff stood slowly with her hands raised. She was cornered by walls on three sides and surrounded by four to five officers pointing weapons. Officers shouted conflicting commands at Plaintiff and one another. No officer stated the legal basis for the detention. Plaintiff was placed in handcuffs that were applied so tightly they caused visible bruising, and she was transported to OBPD custody. No reason for the detention was stated.

66. Only after booking did OBPD corrections staff inform Plaintiff that she was being charged with "eluding arrest" and "writ of arrest." Plaintiff questioned the legality of the

charges, noting that officers had never announced a pursuit or order to stop. A jail officer responded that "writ of arrest is the charge. It is a charge in and of itself."

67. Plaintiff and her personal belongings were searched, and she was booked into OBPD custody at approximately 12:00 p.m. on February 25, 2025. Plaintiff was later required to post bond for the eluding charge in the amount of $1,085.

68. Following release from OBPD custody that evening, Plaintiff was re-detained based solely on the alias warrant issued by Judge Scully. She was held overnight.

69. During this detention, Plaintiff was subjected to degrading and punitive conditions. She was required to toilet without privacy in a cell visible to male inmates and officers through a large window, with constant camera surveillance. Lights remained fully illuminated throughout the night, and Plaintiff was exposed to cold temperatures without adequate protection. She made multiple requests for medically necessary equipment, all of which were denied.

70. During Plaintiff's detention, attorney Joshua Kesling contacted OBPD officials and misrepresented himself as Plaintiff's attorney. He obtained information regarding her detention and her private booking records and then shared that information with Defendant John Grissom, Plaintiff's documented abuser.

71. On the evening of February 25, 2025, John Grissom was overheard speaking by phone for hours, loudly and publicly discussing Plaintiff's detention and arrest details. This demonstrated that confidential booking information had been disclosed without Plaintiff's consent. The unlawful disclosure caused Plaintiff and her minor children significant emotional distress.

Unlawful Detention, Bodily Violation, and Retaliatory Disclosure of Jail Surveillance

72. On February 26, 2025, at approximately 6:30 a.m., Plaintiff was transported by Baldwin County Sheriff's Office officials to the Baldwin County Jail, located over one hour away. Upon arrival, she was detained for an additional eight hours without formal charges or legal explanation. Plaintiff was strip searched, subjected to a cavity search, and forced to wear a uniform associated with felony detainees.

73. Around noon on February 26, 2025, Baldwin County Jail officials informed Plaintiff that she was being held for "failure to pay child support." Plaintiff had never been the subject of a child support obligation, and no such order existed.

74. Plaintiff appeared before a Baldwin County judge for a bond hearing and explicitly stated that she was the *recipient* of child support, not the obligor. The presiding judge disregarded her statement and enforced Judge Scully's $1,500 cash-only bond. The bond was required to be paid in person via money order by a third party.

75. Plaintiff was required to pay $1,500 in cash to secure her release. She was then ordered to pay an additional $1,000 in appearance bond and $1,500 in alleged "child support" to the Alabama Department of Human Resources (DHR), despite the absence of any legal support obligation or adjudicated arrears.

76. While Plaintiff remained in custody on February 26, 2025, attorney Joshua Kesling filed subpoenas requesting all video footage, jail records, and surveillance evidence related to Plaintiff's detention. The requested footage included images and video of Plaintiff during strip searches, toileting without privacy, and confinement under visibly degrading conditions.

77. Judge William E. Scully immediately approved the subpoenas, explicitly waiving Plaintiff's 15-day statutory right to object. This approval occurred despite prior written

23

notifications to the court of Plaintiff's status as a domestic violence survivor, and of ongoing harassment and retaliation by Kesling and Defendant John Grissom. Judge Scully's authorization of these subpoenas, including sensitive footage depicting forced nudity, constituted judicially sanctioned retaliation and intentional infliction of humiliation and psychological trauma.

78. On March 1, 2025, Plaintiff filed an emergency motion to quash the subpoenas. The motion objected to the release of sensitive footage, cited irrelevance to any pending custody or support matter, and identified the request as degrading and harmful. Judge Scully denied the URGENT motion, waiting until March 12, 2025, to ensure the subpoenas were executed. His denial was without a hearing or justification.

79. On March 10, 2025, at 1:38 p.m., Guardian ad Litem Jason Spry filed a motion requesting psychological evaluations for Plaintiff's minor children. The motion directed that the Alabama Department of Human Resources (DHR) take physical custody of the children, transport them to Dr. Jack Carney's office over an hour away, supervise them during the evaluation, and return them thereafter. The motion explicitly barred Plaintiff from attending or supporting her children.

80. The motion was based on hearsay and unverified opinions from Carney and DHR staff, none of whom had legal standing to request evaluations. These individuals had been introduced into the case solely by Defendant John Grissom, who has a documented history of domestic violence. The motion was filed after 1:30 p.m. and included a pre-scheduled appointment for 8:30 a.m. the next day, March 11, 2025—leaving Plaintiff fewer than three business hours to prepare a response or receive a ruling before DHR would take custody of the children.

81. Judge William E. Scully, Jr. approved the motion without notice, hearing, or written findings of necessity. The attached appointment confirmed that Spry, Carney, and DHR officials had coordinated outside formal legal channels, engaging in ex parte communications to circumvent Plaintiff's parental rights and obstruct her ability to object or protect her children.

82. On March 12, 2025, Judge Scully reaffirmed approval of the evaluations, again without addressing Rule 35 requirements, individual necessity, jurisdictional authority, or procedural safeguards.

83. On March 21, 2025, Plaintiff appeared in Baldwin County Circuit Court for a hearing publicly noticed as addressing alias warrant enforcement. Instead, Judge William Scully shifted the proceeding into a status hearing on psychological evaluations of Plaintiff's children. Despite prior cancellations by DHR citing lack of a valid Rule 35 order, Scully asserted Plaintiff had "interfered" with evaluations and stated this was the real reason she "wound up in jail."

84. During the hearing, Judge Scully placed a phone call from the bench to Defendant Laurie Hoyt, Assistant Attorney General for the Alabama Department of Human Resources. Portions of the call were audible in open court. Defendant Hoyt stated that DHR did not require the evaluations "on their end," acknowledged that Plaintiff "does not consent," and confirmed that DHR was only acting on a court directive. Judge Scully replied, "I don't care," and stated evaluations would proceed "no matter what," unless the children were hospitalized.

85. Defendant Hoyt responded, "Mom isn't going to be happy," and speculated that Plaintiff was "difficult to get ahold of." She further confirmed that DHR had no independent basis

for requesting or requiring the evaluations, but would comply with the directive anyway. No legal hearing, Rule 35 motion, or individualized finding had been made prior to this.

86. These actions—DHR's acquiescence to unauthorized directives, coordination with the judiciary, and disregard of Plaintiff's rights as the legal custodian—constitute state action under color of law that violated Plaintiff's and her children's rights under the First, Fourth, and Fourteenth Amendments. They further demonstrate retaliatory conduct and unlawful state interference designed to bypass due process protections.

87. On the record, Judge Scully also stated: "I know you filed a federal claim, but I am not going to stop unless the feds tell me to." This statement provides contemporaneous proof of retaliatory intent, jurisdictional defiance, and deliberate misuse of judicial power to punish Plaintiff for exercising federal rights.

88. Plaintiff incorporates by reference the factual record, legal arguments, and exhibits submitted in support of her Emergency Motion for Temporary Restraining Order filed March 19, 2025, as well as all related supplemental filings. Plaintiff will file additional exhibits, evidence, and amended pleadings pursuant to Fed. R. Civ. P. 15.

VI.    COUNTS

## COUNT I – First Amendment Retaliation for Protected Speech and Petitioning

### 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

2. Plaintiff engaged in protected activity under the First Amendment, including but not limited to filing emergency motions for protection of her children; submitting reports of abuse to law enforcement and DHR; publishing commentary and court filings that

disclosed judicial misconduct and domestic violence; and lawfully objecting to court-ordered psychological evaluations based on the absence of a valid Rule 35 order.

3. Within 36 hours of Plaintiff filing an emergency motion to stay unlawful psychological evaluations, she was arrested and jailed under an alias contempt warrant. At the time of arrest, no child support order existed, and the warrant was based on contested GAL fees—rendering the contempt order legally void and procedurally defective.

4. The Alabama Department of Human Resources (DHR) canceled the scheduled psychological evaluations shortly after Plaintiff's objection, implicitly acknowledging her legal arguments. The arrest immediately following this cancellation evidences a retaliatory motive.

5. At a March 21, 2025, hearing, Judge William Scully stated that Plaintiff "wound up in jail" for "interfering" with the psychological evaluations—an admission that her arrest was not for willful contempt, but for challenging state action through lawful petitioning.

6. Defendants further retaliated by subpoenaing and disclosing jail surveillance, financial documents, and strip search footage unrelated to custody litigation, in order to humiliate and punish Plaintiff for her protected legal advocacy.

7. Defendants, including Judge Scully, attorneys Joshua Kesling and Olivia Newton, Guardian ad Litem Jason Spry, and others acting under color of state law, used their positions to suppress Plaintiff's speech, silence her advocacy, and chill future expressions by retaliating against her disclosures of abuse and systemic misconduct.

8. Plaintiff's speech did not constitute harassment, defamation, or unlawful conduct and was fully protected under the First Amendment.

9. As a result of Defendants' actions, Plaintiff suffered chilling of protected speech, reputational harm, and loss of meaningful access to the courts.

10. Defendants' conduct violated clearly established First Amendment protections, including the right to petition the government without retaliation.

11. Plaintiff seeks declaratory and injunctive relief, including the vacatur of retaliatory contempt orders, an injunction against further suppression of protected speech, and court recognition of the chilling impact on Plaintiff's legal advocacy.

12. Plaintiff expressly reserves the right to seek compensatory and punitive damages at a later stage, pursuant to Rule 15 of the Federal Rules of Civil Procedure.

## COUNT II – First Amendment: Religious Discrimination and Retaliatory Targeting

### 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

2. Defendants, acting under color of law, used Plaintiff's perceived religious beliefs as a basis to discredit her, justify adverse rulings, and manipulate custody outcomes.

3. During psychological evaluations and courtroom proceedings, Defendants—including but not limited to Dr. Jack Carney, Joshua Kesling, and Judge William Taylor—introduced fabricated claims about Plaintiff's religious identity, falsely suggesting that she engaged in Wiccan or non-Christian practices.

4. These claims were not grounded in fact and were presented to portray Plaintiff as unstable, unfit, or morally deficient, in a deliberate effort to undermine her credibility and parental rights.

5. Defendants' targeting of Plaintiff based on perceived religious identity or lack thereof violated her First Amendment rights to freedom of religion, freedom from religious discrimination, and freedom from government-imposed religious tests.

6. Plaintiff was prejudiced in custody proceedings and subjected to state-sanctioned hostility for beliefs she does not hold, resulting in stigma, reputational harm, emotional distress, and unequal treatment under the law.

7. Plaintiff seeks declaratory and injunctive relief, including a ruling that the introduction and use of religious allegations in custody decisions violates her constitutional rights.

8. Plaintiff expressly reserves the right to seek compensatory and punitive damages at a later stage, pursuant to Rule 15 of the Federal Rules of Civil Procedure.

## COUNT III – Unlawful Seizure and False Arrest, Fourth and Fourteenth Amendments – 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

2. On or about February 25, 2025, Plaintiff was seized by officers of the Orange Beach Police Department without notice, without announcement of a warrant, and without any lawful command or explanation.

3. At the time of seizure, Plaintiff had not been accused or charged with any crime, and officers did not articulate any reason for approaching her.

4. Plaintiff peacefully exited a private business and walked home without confrontation. Officers followed her into a residential area, surrounded her home, and engaged in a coordinated search operation without announcing a warrant or basis for arrest.

5.  Upon locating Plaintiff, officers brandished firearms, ordered her to raise her hands, and took her into custody without informing her of any charges, violations, or pending proceedings.

6.  Plaintiff was advised only after booking at the Orange Beach Police Department that she was being held on a "writ of arrest," with no explanation provided and no warrant shown.

7.  The following day, at the Baldwin County Jail, officials informed Plaintiff she was being held for "failure to pay child support"—a justification that had not been announced at the time of arrest and was factually inaccurate, as Plaintiff was not subject to any support obligation.

8.  The arrest was carried out based on a civil alias warrant issued without notice, without hearing, and without probable cause. OBPD officers had no legal basis or authority to effect a custodial arrest under the circumstances.

9.  Defendants' seizure of Plaintiff without a valid criminal warrant, probable cause, or announced authority constituted an unlawful arrest in violation of the Fourth and Fourteenth Amendments.

10. Plaintiff seeks declaratory and injunctive relief, and expressly reserves the right to seek compensatory and punitive damages at a later stage pursuant to Rule 15 of the Federal Rules of Civil Procedure.

## COUNT IV – Unlawful Search of Person and Property, Fourth Amendment – 42 U.S.C. § 1983

1.  Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

2. Defendants, acting under color of law, unlawfully entered private property, searched said private property, and searched Plaintiff's person and belongings without a warrant, probable cause, or valid consent.

3. Law enforcement officers misrepresented their purpose to a third-party homeowner to gain access to private premises and then used drawn weapons and commands to force Plaintiff's surrender.

4. Plaintiff was patted down, had her personal bag searched, and was later subjected to a full strip and cavity search at the Baldwin County Jail—all without lawful justification or individualized suspicion.

5. These searches were conducted in connection with a civil contempt warrant that carried no criminal predicate and no lawful authority to conduct bodily or property searches.

6. Defendants' actions violated Plaintiff's right to be free from unreasonable searches under the Fourth Amendment.

7. Plaintiff seeks declaratory and injunctive relief, and expressly reserves the right to seek compensatory and punitive damages at a later stage pursuant to Rule 15.

COUNT V – Excessive Force and Coercive Use of Law Enforcement Power, Fourth Amendment

42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

2. The use of police force in this matter—including drawn firearms, public shaming, and physical seizure—was not proportionate to the circumstances and was executed solely to retaliate against Plaintiff's legal activity.

3. Officers approached Plaintiff without warning, failed to announce a warrant or order to stop, then pursued her on foot, surrounded her with firearms drawn, and kicked her upon discovery.

4. Plaintiff was handcuffed, transported in visible distress, and detained under inhumane conditions based on a warrant that was void ab initio.

5. The use of state force was not based on a criminal offense or immediate danger to the public, but on a retaliatory civil contempt warrant linked to her protected court filings.

6. These acts constituted an unreasonable seizure and use of excessive force in violation of Plaintiff's Fourth Amendment rights.

7. Plaintiff seeks declaratory and injunctive relief, and expressly reserves the right to seek compensatory and punitive damages at a later stage pursuant to Rule 15.

## COUNT VI – Failure to Intervene by Bystander Officers, Fourth and Fourteenth Amendments, 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

2. Multiple officers were present during Plaintiff's unlawful arrest, seizure, and search. These officers either participated in or observed constitutional violations including: unlawful entry, excessive force, seizure without probable cause, and retaliatory arrest.

3. These bystander officers had a realistic opportunity to intervene and prevent or mitigate the unlawful conduct, but chose not to act.

4. Their failure to object, prevent, or stop the unlawful arrest and use of force contributed to Plaintiff's detention, humiliation, and physical and emotional harm.

5.  These officers acted under color of law and their inaction violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments.

6.  Plaintiff seeks declaratory and injunctive relief, and expressly reserves the right to seek compensatory and punitive damages at a later stage pursuant to Rule 15.

## COUNT VII – Unlawful Bodily Intrusion: Forced Psychological Evaluations and Drug Testing, Fourth and Fourteenth Amendments, 42 U.S.C. § 1983

1.  Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

2.  Defendants, acting under color of law, compelled Plaintiff and her minor child, G.G., to undergo involuntary psychological evaluations without a valid court order supported by individualized findings, necessity, or procedural compliance.

3.  Plaintiff was further compelled to undergo repeated drug tests—more than thirty in total—without probable cause, evidentiary justification, or adherence to lawful process. At times, she was required to remove her clothing and submit to bodily exposure under court supervision.

4.  No showing was made that Plaintiff presented a danger to herself or others, and no procedural safeguards were followed under state law or federal constitutional standards.

5.  The orders for drug testing and psychological evaluations lacked the requirements of due process, including notice, hearing, and opportunity to object. When Plaintiff did object, she was threatened with contempt and arrested shortly thereafter.

6.  These actions constituted unlawful searches and seizures of Plaintiff's body and mind, in violation of her Fourth Amendment right to be free from government intrusion into her person without lawful cause.

7. The coercion, surveillance, and bodily intrusion inflicted emotional trauma and violated the constitutional rights of both Plaintiff and her minor child, who disclosed abuse during the evaluations and was subsequently ignored or punished by court actors.

8. Plaintiff seeks declaratory and injunctive relief, including a declaration that the forced psychological evaluations and drug testing were unlawful. She expressly reserves the right to seek compensatory and punitive damages at a later stage pursuant to Rule 15 of the Federal Rules of Civil Procedure.

## COUNT VIII – Civil Conspiracy to Violate Constitutional Rights, Fourth and Fourteenth Amendments, 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

2. Defendants, including but not limited to Judge William Scully, GAL Jason Spry, attorneys Joshua Kesling and Olivia Newton, and officers of the Baldwin County Sheriff's Office and Orange Beach Police Department, engaged in a coordinated effort to deprive Plaintiff of her constitutional rights under the Fourth and Fourteenth Amendments.

3. On or about February 4, 2025, Defendants knowingly permitted a contempt motion— filed fewer than twelve hours earlier and not scheduled for hearing—to be introduced without notice or opportunity to respond.

4. Defendants then issued an alias warrant without a specified charge, knowing that such a warrant would be misinterpreted by law enforcement as authority for immediate arrest, bypassing legal review.

5. On February 25, 2025, Defendants caused Plaintiff to be hunted and seized without a judicial finding of probable cause, without notice of arrest, and without lawful process.

6. Defendants unlawfully searched private property, arrested Plaintiff without legal justification, and failed to articulate any valid basis for her detention at the time of seizure.

7. Following Plaintiff's arrest, Defendants jointly acted to add fabricated post hoc justifications, including "eluding arrest" and "failure to pay child support," despite the absence of any underlying criminal conduct or lawful support order.

8. Defendants further conspired to block Plaintiff's access to release by denying bond reductions and refusing to acknowledge the procedural irregularities of the warrant.

9. Each Defendant played an active role in this coordinated deprivation of rights by submitting unlawful motions, misclassifying civil violations as criminal offenses, ignoring objections, executing invalid warrants, and facilitating prolonged and degrading detention.

10. The agreement between Defendants was not merely parallel misconduct, but a shared plan to intimidate, silence, and punish Plaintiff for her legal advocacy and protected speech.

11. This conspiracy resulted in violations of Plaintiff's rights to bodily integrity, due process, and freedom from unreasonable searches and seizures.

12. Plaintiff seeks declaratory and injunctive relief, and expressly reserves the right to seek compensatory and punitive damages at a later stage pursuant to Rule 15.

COUNT XIV – Unlawful Seizure and Dissemination of Sensitive Surveillance Footage

Fourth Amendment – 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

2. While detained at Orange Beach Police Department and Baldwin County Jail, Plaintiff was continuously recorded by surveillance cameras, including while using the toilet, being strip searched, and undergoing invasive bodily searches.

3. These recordings captured Plaintiff in a state of extreme physical vulnerability, without her knowledge, consent, or opportunity to opt out, and without connection to any criminal charge.

4. On or around February 26, 2025, Defendants Kesling and Grissom filed subpoenas seeking access to all footage, booking records, and surveillance material from Plaintiff's time in detention.

5. The requested materials had no relevance to any pending custody or civil matter. Their only apparent purpose was to intimidate and degrade Plaintiff by exposing sensitive, humiliating images.

6. Judge William Scully immediately approved the subpoenas and explicitly waived Plaintiff's statutory right to object. Plaintiff's emergency motion to quash was ignored for eleven days and then denied without hearing or explanation.

7. Defendants acted under color of law to unlawfully seize and disseminate private visual data, in violation of Plaintiff's Fourth Amendment right to privacy and bodily integrity.

8. These acts served no legitimate government interest and were retaliatory in nature. Plaintiff seeks declaratory and injunctive relief, and reserves the right to seek compensatory and punitive damages under Rule 15.

COUNT XV – Deprivation of Liberty Without Due Process, Fifth and Fourteenth Amendments

42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

2. Plaintiff was arrested and jailed without notice, without a hearing, and without any prior adjudication of willful noncompliance or ability to pay the alleged obligation.

3. The contempt warrant was issued based on disputed GAL fees, not child support, yet processed through court systems as a support violation to trigger arrest powers and harsher bond conditions.

4. The detention lasted over 24 hours and included punitive conditions without a finding of criminal guilt or procedural justification.

5. These actions constitute a deprivation of liberty without due process in violation of the Fifth and Fourteenth Amendments.

6. Plaintiff seeks declaratory and injunctive relief, and reserves the right to pursue compensatory and punitive damages at a later stage under Rule 15.

COUNT XVI – Violation of the Right Against Self-Incrimination and Procedural Due Process

Fifth Amendment – 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

2. While in custody, Plaintiff was not informed of her Miranda rights, was not told the nature of any charge against her, and was questioned about matters unrelated to any formal criminal proceeding.

3. Defendants subpoenaed and used Plaintiff's custodial records, surveillance footage, and financial data gathered during her detention in unrelated civil proceedings, without notice or hearing.

4. The court then denied Plaintiff's emergency motion to quash these subpoenas, depriving her of the opportunity to object before her private data was disseminated and used against her.

5. The use of custodial records gathered through state authority, absent procedural protections or valid judicial findings, violated Plaintiff's Fifth Amendment rights against self-incrimination and her right to fairness under the law.

6. Plaintiff seeks declaratory and injunctive relief, and reserves the right to pursue compensatory and punitive damages at a later stage under Rule 15.

## COUNT XVII– Deprivation of Parental Rights and Procedural Fairness

### Fifth and Fourteenth Amendments – 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

2. Defendants, acting under color of law, compelled Plaintiff's minor children to undergo psychological evaluations and custodial interviews without their parent or legal guardian present.

3. Plaintiff was actively barred from accompanying her children during these appointments and from transporting or attending to them during the process.

4. No lawful hearing was held authorizing this exclusion, and no justification was made on the record for depriving the children of parental accompaniment during a psychologically invasive evaluation.

5.  Defendants' actions violated the substantive and procedural due process rights of both Plaintiff and her children by unlawfully separating them during critical medical and legal procedures, absent a showing of harm or unfitness.

6.  Plaintiff seeks declaratory and injunctive relief to prevent future violations and preserve parental participation in protected processes. She reserves the right to seek compensatory and punitive damages under Rule 15.

## COUNT XVIII – Deprivation of Fair Process and Trial Rights in Violation of the Sixth Amendment, 42 U.S.C. § 1983

1.  Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

2.  Defendants, acting under color of law, introduced evidence against Plaintiff in civil proceedings that was obtained during her pretrial detention, including surveillance footage depicting her in states of undress, undergoing strip searches, and toileting without privacy.

3.  Plaintiff was never afforded an opportunity to review or challenge the content of these materials, nor to object before they were disseminated to opposing counsel, the GAL, the court, or her known abuser.

4.  Judge Scully waived Plaintiff's right to object to the subpoenas and delayed ruling on Plaintiff's urgent motion to quash until the materials had already been obtained and circulated.

5.  Plaintiff was further denied access to psychological evaluation reports concerning herself and her minor child prior to their introduction into court proceedings. The evaluator

testified in open court without Plaintiff being given time to review the reports or prepare for cross-examination.

6.  Plaintiff was compelled to cross-examine the evaluator on the spot, in the presence of a hostile judge and without access to the material evidence being used against her.

7.  These conditions denied Plaintiff her right to confront evidence, respond meaningfully to accusations, and participate in adversarial proceedings on equal footing.

8.  The introduction of unreviewed, prejudicial, and degrading materials into proceedings that affect parental rights and liberty interests constitutes a violation of the Sixth Amendment right to a fair and impartial process.

9.  Plaintiff seeks declaratory and injunctive relief, and reserves the right to pursue compensatory and punitive damages under Rule 15.

COUNT XIX – Sixth Amendment Violation: Biased Legal Process and Structural Coercion

42 U.S.C. § 1983

1.  Plaintiff realleges and incorporates all prior paragraphs as if fully set forth herein.

2.  Defendants knowingly permitted a Guardian ad Litem—lacking legal standing in a private custody action—to file motions, initiate contempt proceedings, compel psychological evaluations, and act as a party-litigant.

3.  These unauthorized filings directly influenced judicial rulings concerning Plaintiff's liberty, custody rights, and financial liability, in violation of her right to adversarial process before a neutral tribunal.

4. The GAL was openly aligned with opposing counsel and Plaintiff's known abuser, participated in ex parte communications, and filed motions that led to Plaintiff's arrest and public degradation.

5. Judge Scully permitted the GAL to exercise procedural control over the case, undermining Plaintiff's ability to challenge false claims, present evidence, or receive neutral adjudication.

6. These conditions deprived Plaintiff of a fair forum, rendered adversarial process meaningless, and subjected her to coerced outcomes without an impartial adjudicator.

7. The structure of the proceedings—controlled by biased actors, marked by suppression of Plaintiff's filings, and infected by judicial favoritism—violated Plaintiff's Sixth Amendment rights to a fair and unbiased process.

8. Plaintiff seeks declaratory and injunctive relief, and reserves the right to pursue compensatory and punitive damages under Rule 15.

## COUNT XX: Eighth Amendment – Cruel and Unusual Punishment, 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

2. Plaintiff was arrested and jailed without probable cause, legal justification, or procedural protections, based on a fabricated contempt warrant.

3. The contempt was civil in nature and arose solely from Plaintiff's lawful objection to court-ordered psychological evaluations lacking a valid legal basis.

4. The resulting jailing served no legitimate purpose and was grossly disproportionate to the alleged infraction, violating the constitutional prohibition against cruel and unusual punishment.

5. Judge Scully's statement that Plaintiff "wound up in jail" for "interfering" with psychological evaluations—despite no such charge appearing on the record—demonstrates a retaliatory and punitive intent.

6. Plaintiff was publicly humiliated, removed from her family and children, and subjected to unnecessary trauma and reputational harm.

7. Defendants acted under color of law to inflict punishment for Plaintiff's protected conduct.

8. These actions violated Plaintiff's rights under the Eighth Amendment to be free from cruel and unusual punishment and arbitrary state-inflicted harm.

## COUNT XXI: Eighth and Fourteenth Amendments – Inhumane Conditions of Confinement

### 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

2. During pretrial detention, Plaintiff was subjected to degrading, unsanitary, and unsafe conditions wholly disproportionate to the civil nature of the contempt finding.

3. Plaintiff was held in a cell with bright overhead lights kept on through the night, depriving her of sleep and exacerbating trauma-related symptoms.

4. She was denied privacy while using the restroom, placed in full view of a surveillance camera and male staff, causing severe humiliation and distress.

5. Plaintiff was denied access to medically necessary items, including contact lens solution and a storage case, despite alerting officials of the risk of harm.

6. She was denied food consistent with her documented dietary restrictions and was held for extended hours without access to water.

7. Plaintiff was required to wear unsanitary clothing and jail-issued footwear without disinfection, exposing her to potential infection.

8. She was forced to change into felony-colored uniforms, despite being held on a civil contempt matter.

9. Plaintiff was strip searched unnecessarily and without justification, despite no underlying criminal charge or contraband suspicion.

10. These conditions were not necessary to maintain order or safety and served only to degrade, punish, and retaliate against Plaintiff.

11. Defendants acted with deliberate indifference to Plaintiff's physical safety, medical needs, and emotional well-being.

12. These actions violated Plaintiff's rights under the Eighth Amendment and her right to bodily integrity, dignity, and due process under the Fourteenth Amendment.

## COUNT XXII: Eighth Amendment – Excessive Fines and Bail

## 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

2. Plaintiff was arrested on a contempt warrant falsely premised on unpaid "child support," though the actual basis was disputed GAL fees unrelated to support enforcement.

3. Defendants misclassified the fees as child support in order to trigger arrest and incarceration powers unavailable in a standard civil collection context.

4. Plaintiff was held on an unreasonably high cash-only bond without a hearing or inquiry into her ability to pay, in violation of clearly established standards.

5. Defendants imposed punitive financial conditions without demonstrating necessity, and used the bond process to inflict harm and suppress protected activity.

6. The financial penalties and detention imposed were disproportionate to the underlying dispute and lacked any valid rehabilitative or deterrent rationale.

7. These actions constituted excessive fines and punitive bail under the Eighth Amendment and violated Plaintiff's right to be free from coercive state financial punishment.

COUNT XXIII: Deliberate Use of Jail Conditions for Punitive and Retaliatory Purposes in Violation of the Eighth Amendment, 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

2. Defendants, acting under color of law, obtained and disseminated jail surveillance video, booking records, and other custodial materials depicting Plaintiff in vulnerable and degrading circumstances.

3. These materials included strip searches, toileting without privacy, and footage captured during medical and custodial procedures.

4. Defendants subpoenaed these materials for use in unrelated custody proceedings and denied Plaintiff the opportunity to object or prevent their release.

5. The videos were used solely for the purpose of humiliating, shaming, and intimidating Plaintiff and had no legitimate evidentiary value in any custody-related claim.

6. The court denied Plaintiff's emergency motion to quash the subpoenas after an unexplained 11-day delay, during which the materials were accessed and reviewed by opposing parties.

7. This use of carceral surveillance and physical intrusion for retaliatory purposes constitutes cruel and unusual punishment under the Eighth Amendment.

## COUNT XXIV: Issuing Orders Without Jurisdiction While Rule 60(b)(3) Motion Was Pending in Violation of Procedural Due Process Under the Fourteenth Amendment, 42 U.S.C. § 1983

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. On February 23, 2024, Plaintiff filed a Rule 60(b)(3) motion to vacate the final judgment in her divorce and custody proceedings, citing fraud, misconduct, and constitutional violations.

3. Under established legal principles, the filing of a Rule 60(b)(3) motion based on fraud divests the court of jurisdiction over the underlying judgment until the motion is adjudicated.

4. Despite the pendency of that motion, Defendant Judge William E. Scully, Jr. continued to exercise judicial authority in the case and took substantial new actions affecting Plaintiff's liberty, property, and parental rights.

5. While the Rule 60(b)(3) motion remained pending and unaddressed, Defendant Scully: a. Reappointed the Guardian ad Litem specifically identified in the fraud allegations; b. Permitted and ruled on motions to modify custody and parenting time; c. Ordered psychological evaluations of Plaintiff and her minor children without hearing, evidentiary basis, or a valid Rule 35 motion; d. Ordered Plaintiff to submit to an invasive 19-panel drug screening without legal justification; e. Denied Plaintiff's motion for judicial recusal without hearing or findings; f. Ordered the forced sale of Plaintiff's residence; and g.

45

Authorized execution of an alias warrant based on disputed GAL fees, resulting in Plaintiff's arrest and detention.

6. Each of these actions occurred while the court was divested of jurisdiction by Plaintiff's pending Rule 60(b)(3) motion. These acts exceeded the court's authority and were taken in violation of clearly established constitutional limits.

7. Defendant's continued adjudication of the case under a legally challenged judgment denied Plaintiff her right to a meaningful opportunity to be heard, to an impartial tribunal, and to protection from arbitrary state action.

8. Defendant's actions also violated Plaintiff's fundamental rights to bodily integrity, family integrity, and residential security, all of which are protected by the Fourteenth Amendment's Due Process Clause.

9. As a direct and proximate result of these unlawful actions, Plaintiff suffered ongoing emotional and psychological distress, reputational harm, interference with parent-child relationships, financial injury, and deprivation of her liberty and safety.

10. Defendant Scully's refusal to recuse himself, and his decision to adjudicate the very motion alleging his bias, compounded the due process violation and reinforced the appearance and effect of judicial retaliation.

COUNT XXV: Fourteenth Amendment – Violation of Fundamental Parental Rights

42 U.S.C. § 1983

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2. The Fourteenth Amendment to the United States Constitution protects the fundamental rights of parents to make decisions concerning the care, custody, and control of their children.

3. Plaintiff lawfully exercised her parental authority by objecting to involuntary psychological evaluations of her minor child, which were ordered without a valid Rule 35 motion, without hearing, and without individualized findings of necessity.

4. The psychological evaluations were to be conducted by a court-selected evaluator with known personal ties to opposing counsel and a demonstrated pattern of bias against Plaintiff.

5. Plaintiff's objection to the evaluations was grounded in her constitutional rights, statutory protections under Alabama law, and her responsibility as a parent to protect her child from unnecessary and harmful intrusion.

6. Rather than address Plaintiff's objection through lawful adjudication, Defendants retaliated by initiating contempt proceedings and issuing an alias warrant for Plaintiff's arrest.

7. Plaintiff was jailed for asserting her legal rights as a parent and for seeking to prevent psychological harm to her child.

8. The arrest and resulting detention obstructed Plaintiff's ability to parent, disrupted her family relationships, and created a chilling effect on her future ability to exercise custodial discretion.

9. The use of judicial and law enforcement power to punish Plaintiff for lawful parental advocacy constituted a direct violation of her Fourteenth Amendment right to familial integrity and parental autonomy.

10. Defendants, acting under color of law, further violated Plaintiff's parental rights by conspiring to manufacture a false arrest using misrepresented civil contempt charges, with no supporting hearing, findings, or valid legal basis.

11. Defendants then used Plaintiff's unlawful detention as a pretext to obtain and disseminate custodial surveillance footage—including footage depicting Plaintiff in degrading, vulnerable conditions during incarceration.

12. This footage was later introduced or referenced in child custody proceedings in which Plaintiff's fitness as a parent was under review, despite having no relevance to the legal issues before the court.

13. The surveillance was obtained through an abuse of process, waived Plaintiff's statutory right to object, and was deliberately used to humiliate, discredit, and punish her for asserting protected parental rights.

14. The actions of Defendants collectively infringed on Plaintiff's constitutional right to make decisions concerning the care and custody of her children, free from state retaliation or coercion.

15. As a direct and proximate result of these actions, Plaintiff suffered severe emotional distress, reputational damage, financial harm, disruption of family relationships, and lasting psychological trauma.

16. The conduct of Defendants described herein violated Plaintiff's fundamental parental rights as guaranteed by the Fourteenth Amendment and constitutes actionable misconduct under 42 U.S.C. § 1983.

COUNT XXVI: Fourth and Fourteenth Amendments – Coerced Psychological Evaluations and Violation of Bodily Integrity, 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.

2. Defendants, acting under color of law, ordered Plaintiff and her minor child G.G. to undergo involuntary psychological evaluations based solely on motions submitted by Defendant John Grissom and his counsel—despite his history of domestic violence and status as the alleged abuser.

3. These evaluations were not supported by a valid Rule 35 motion, hearing, or judicial finding of necessity, and were ordered without individualized findings, factual evidence, or consent.

4. Defendants further ordered the evaluations to be conducted by Dr. Jack Carney, a psychologist with documented personal and professional ties to Defendant Kesling, creating an inherent conflict of interest.

5. Plaintiff and G.G. were forced to undergo psychological probing under threat of contempt and custodial penalties, in direct violation of their rights to bodily integrity, medical privacy, and freedom from unlawful state intrusion.

6. Plaintiff's objection to the evaluations was ignored, and her efforts to vacate the orders or appeal the intrusion were summarily denied without hearing or justification.

7. Plaintiff was further compelled to turn her minor daughter over to third-party evaluators without being present, consulted, or permitted to accompany or support her child— despite ongoing abuse disclosures and medical trauma.

8. These actions constituted an unconstitutional search under the Fourth Amendment and deprived Plaintiff and her child of procedural and substantive due process under the Fourteenth Amendment.

9. Defendants violated Plaintiff's parental rights by allowing a known abuser to dictate medical interventions without consent or legal justification, undermining her role as legal custodian and protector of her children.

10. These coerced evaluations caused significant trauma, fear, and emotional harm, and were weaponized to discredit Plaintiff's credibility and suppress abuse disclosures.

11. Defendants acted with deliberate indifference to Plaintiff's rights and the safety of her children, using psychological evaluations not for legitimate inquiry, but as a tool of judicial retaliation and control.

12. These actions violated clearly established constitutional rights and require declaratory and injunctive relief to prevent further unlawful psychological intrusion and state-sanctioned abuse.

COUNT XXVII: Violation of the Equal Protection Clause of the Fourteenth Amendment

42 U.S.C. § 1983

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. Defendants, acting under color of law, applied judicial authority, civil enforcement procedures, and criminal referrals in a manner that was intentionally discriminatory, violating Plaintiff's right to equal protection under the Fourteenth Amendment.

3. Defendants refused to investigate, charge, or arrest Plaintiff's ex-husband despite multiple reports of domestic violence, stalking, and coercive control, supported by evidence including police reports, text message admissions, and eyewitness testimony.

4. Defendants refused to enforce Plaintiff's child support orders against her ex-husband, allowing substantial arrears to accumulate without consequence, even as they

aggressively pursued contempt and incarceration against Plaintiff for disputed administrative fees.

5. When Plaintiff's ex-husband failed to appear for a scheduled hearing on her petition for a Protection from Abuse (PFA) order, the court rescheduled the hearing without sanction or explanation.

6. When Plaintiff inadvertently failed to appear for a hearing, the court immediately denied her motion, granted contempt, and issued a warrant for her arrest, despite the matter not being noticed as a contempt proceeding.

7. These procedural disparities reflect a broader pattern of gender-based discrimination in which protective mothers are punished and disbelieved, while abusive fathers are shielded and excused.

8. The disparate treatment of Plaintiff was not based on neutral legal standards or any legitimate government interest, but rather on animus, bias, and a systemic pattern of selective enforcement against female domestic violence survivors asserting parental rights.

9. Defendants further allowed Guardian ad Litem Jason Spry to operate in alignment with Plaintiff's abuser by filing unauthorized motions and manipulating court proceedings to Plaintiff's detriment.

10. The court failed to disqualify or restrain GAL Spry despite clear evidence of partiality, misconduct, and alignment with the opposing party, contributing directly to the deprivation of Plaintiff's parental rights and personal liberty.

11. This conduct, in both design and effect, denied Plaintiff equal protection under the law and perpetuated unconstitutional discrimination on the basis of sex, protected activity, and status as a domestic violence survivor.

12. The actions of Defendants described herein violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

COUNT XXVIII: Violation of the Fourteenth Amendment

Willful Failure of Judicial and Court-Appointed Officials to Intervene in Ongoing Constitutional Violations, 42 U.S.C. § 1983

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. From May 2024 through March 2025, Plaintiff submitted no fewer than thirteen formal motions and objections placing the Court, Guardian ad Litem Jason Spry, and other court officers on direct notice of ongoing constitutional violations, procedural misconduct, and judicial abuse of power.

3. These filings included objections to unlawful psychological evaluations, motions challenging fabricated contempt orders, and repeated references to violations of Plaintiff's rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.

4. Plaintiff cited controlling federal precedent and submitted urgent requests for judicial intervention, including: a. A Motion to Quash and Objection to Voyeurism Order, objecting to the use of surveillance footage obtained during pretrial detention and raising constitutional privacy claims; b. An Emergency Motion to Stay Alias Warrant and Bond Hearing, asserting that the contempt order lacked ability-to-pay findings and violated due

process; c. An Emergency Motion to Stay TRO Hearing, objecting to retaliatory scheduling and invoking First and Fourteenth Amendment protections.

5. Plaintiff's filings consistently identified unlawful conduct by the Guardian ad Litem, judicial retaliation against protected filings, misuse of civil debt to justify incarceration, unauthorized surveillance, and denial of due process.

6. Despite being on notice of these issues, court officials and appointed actors failed to intervene or correct the misconduct. Instead, they allowed escalating harm and continued retaliatory action against Plaintiff.

7. Defendants had an affirmative constitutional duty to protect Plaintiff from unlawful state action and to uphold her rights to due process, bodily integrity, and family autonomy.

8. Their repeated refusal to act—despite direct and urgent warnings—constitutes a willful failure to intervene in known and ongoing constitutional violations.

9. As a direct and proximate result of this inaction, Plaintiff suffered irreparable emotional trauma, financial loss, reputational injury, loss of familial bonds, and continued exposure to retaliatory detention, surveillance, and procedural harm.

10. The actions and omissions of Defendants described herein violated Plaintiff's rights under the Fourteenth Amendment to due process and equal protection and constitute actionable misconduct under 42 U.S.C. § 1983.

COUNT XXIX: Violation of Procedural and Substantive Due Process under the Fourteenth Amendment, 42 U.S.C. § 1983

1. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

2. Defendants, acting under color of law, deprived Plaintiff of her constitutional rights to procedural and substantive due process in violation of the Fourteenth Amendment.

3. Plaintiff was selectively targeted and punished without being afforded the basic due process protections required under law.

4. Judge William E. Scully, Jr. made public statements demonstrating personal bias, retaliatory motive, and abuse of judicial authority, including a statement that Plaintiff "wound up in jail" for "interfering" with psychological evaluations, despite no such charge appearing in the record.

5. The arrest of Plaintiff was not the result of a uniform application of law but was instead an unlawful and retaliatory use of state power designed to punish Plaintiff for protected conduct.

6. These acts impaired Plaintiff's ability to meaningfully advocate for herself and her children and constituted a denial of equal protection and due process under the law.

7. The incident described is one example within a broader pattern of judicial retaliation and systemic abuse directed at domestic violence survivors and protective parents.

8. Defendants violated Plaintiff's constitutional rights to notice and opportunity to be heard by waiving her right to respond before issuing a contempt order and arrest warrant.

9. The warrant executed against Plaintiff was a civil alias warrant that lacked factual findings, omitted a valid underlying charge, and failed to meet constitutional standards for any deprivation of liberty.

10. A contempt hearing was held in Plaintiff's absence, without notice, without being docketed, and without the opportunity for Plaintiff to respond—directly violating her right to a fair hearing.

11. The contempt motion at issue had been filed fewer than twelve hours before the hearing at which it was introduced and was addressed during a session where Plaintiff was neither served nor present.

12. The resulting warrant issued from this ex parte discussion—without service, hearing, or adjudicated finding—deprived Plaintiff of liberty and process in violation of clearly established constitutional law.

13. These collective actions denied Plaintiff her fundamental rights to reasonable notice, an opportunity to be heard, and freedom from arbitrary or retaliatory state action.

14. Further, Defendants violated Plaintiff's due process rights by permitting court-appointed Guardian ad Litem Jason Spry, who lacked legal authority to file substantive motions in a non-dependency action, to initiate proceedings that led to contempt findings, psychological evaluations, and other punitive enforcement measures.

15. Defendant Spry's unauthorized filings directly contributed to court orders compelling psychological probing of Plaintiff and her children, without jurisdiction, due process, or lawful authority.

16. These unlawful and unauthorized actions were relied upon by the court, further compounding the deprivation of Plaintiff's rights and subjecting her and her children to traumatic and retaliatory enforcement.

17. As a direct and proximate result of these violations, Plaintiff suffered physical and emotional trauma, family disruption, financial loss, reputational harm, and continued deprivation of liberty and parental integrity.

18. The actions of Defendants described herein violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and constitute actionable misconduct under 42 U.S.C. § 1983.

## COUNT XXX: Fourteenth Amendment and Common Law – Invasion of Privacy Under Color of Law, 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2. Defendants, acting under color of law, unlawfully and intentionally invaded Plaintiff's privacy by subpoenaing and disseminating video surveillance, audio recordings, and custodial records obtained during Plaintiff's pretrial detention.

3. The materials included sensitive and degrading content, including footage of Plaintiff being strip searched, using the toilet without privacy, and changing clothing in full view of cameras and custodial staff.

4. These materials were obtained through subpoenas issued without notice or legal justification, and the court subsequently denied Plaintiff's timely motion to quash, waiving her statutory right to object.

5. The surveillance footage and custodial materials were not relevant to any contested issue before the court, nor were they narrowly tailored to serve a legitimate judicial interest.

6. Despite their irrelevance and deeply personal nature, Defendants introduced or referenced these materials during ongoing family court proceedings concerning custody and parenting rights.

7. The footage was used not as evidence of conduct related to parenting but as a means of degrading, humiliating, and coercing Plaintiff, thereby violating her right to bodily integrity and personal dignity.

8. Defendants' conduct served no valid purpose beyond retaliation and intimidation and was designed to publicly shame Plaintiff and undermine her credibility in unrelated civil proceedings.

9. The actions of Defendants violated Plaintiff's constitutional right to privacy as protected by the Fourteenth Amendment and further contravened established principles of common law privacy prohibiting the dissemination of private, non-consensual, and non-relevant custodial materials.

10. As a direct and proximate result of this unlawful invasion of privacy, Plaintiff suffered emotional trauma, reputational harm, psychological distress, and a chilling effect on her ability to meaningfully participate in judicial proceedings.

11. Defendants' use of surveillance footage depicting involuntary nudity, bodily exposure, and custodial degradation as a form of state-sanctioned retaliation is a violation of clearly established constitutional law and actionable under 42 U.S.C. § 1983.

COUNT XXXI: Violations of the Violence Against Women Act (VAWA), 34 U.S.C. § 12291 et seq.; 42 U.S.C. § 10401 et seq., Retaliation and Systemic Discrimination Against a Domestic Violence Survivor

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2. Plaintiff is a documented survivor of domestic violence who obtained a protective order and made repeated, substantiated disclosures of abuse, stalking, and coercive control by her former partner.

3. Defendants, acting under color of law, knew or should have known of Plaintiff's survivor status at all relevant times, including the period leading up to her arrest, pretrial detention, and subsequent court proceedings.

4. Plaintiff's trauma history, diagnosis of PTSD, and safety concerns were part of the court record and known to judicial officers, including Judge William E. Scully, the appointed Guardian ad Litem, and affiliated court and enforcement actors.

5. Rather than accommodate Plaintiff's protected status as a survivor under VAWA, Defendants retaliated against her for filing protective motions and challenging unlawful court orders that exposed her and her children to harm.

6. Defendants subjected Plaintiff to invasive, unnecessary psychological evaluations, denied her motions for protection and due process, and punished her legal objections with retaliatory contempt findings and arrest.

7. Plaintiff was incarcerated on a fabricated and procedurally invalid warrant, then subjected to degrading conditions that included: strip searches without cause, denial of access to medically necessary items, sleep deprivation, and exposure to constant surveillance while using the restroom and changing clothes.

8. These conditions served no legitimate custodial purpose and were disproportionately inflicted on Plaintiff in retaliation for asserting her parental and protective rights.

9. Defendants misused civil contempt procedures and mislabeled administrative fees as child support to manufacture criminal-level enforcement powers, thereby criminalizing Plaintiff's protected advocacy.

10. These actions constitute systemic gender-based violence and violate protections afforded to survivors under the Violence Against Women Act (VAWA), which prohibits discriminatory state action, retaliation, and coercive control by government agents against individuals seeking protection from abuse.

11. Defendants acted in concert across multiple agencies—including the judiciary, GAL, law enforcement, and custodial authorities—to punish and deter Plaintiff from exercising her rights as a protective parent.

12. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered emotional trauma, reputational harm, financial injury, retraumatization, and a chilling effect on her ability to pursue safety and justice.

COUNT XXXII: Violence Against Women Act (VAWA) and 18 U.S.C. § 2261A
(State-Sanctioned Voyeurism and Retaliatory Surveillance of a Domestic Violence Survivor)

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2. Defendants, acting under color of law, obtained and disseminated surveillance footage and custodial records of Plaintiff during her pretrial detention, including images of her in various states of undress, emotional distress, and physical vulnerability.

3. This footage was obtained under the pretext of a custody dispute but was not relevant to any contested legal issue and served no legitimate legal, evidentiary, or safety purpose.

4. Plaintiff was at all times a known domestic violence survivor. Defendants' actions occurred in the context of a clear power imbalance and in direct response to Plaintiff's protected legal conduct, including filing motions for protection and objecting to unlawful psychological evaluations.

5. The use of private, sensitive detention footage in civil litigation concerning Plaintiff's fitness as a parent constituted a deliberate and retaliatory invasion of privacy.

6. Defendants' conduct was voyeuristic, retaliatory, and gender-targeted. It sought to punish Plaintiff for speaking out, assert dominance over her bodily autonomy, and deter future advocacy.

7. These actions amount to state-sanctioned stalking, harassment, and coercive control in violation of 18 U.S.C. § 2261A, which prohibits the use of electronic surveillance or persistent unwanted conduct to harass or intimidate protected individuals.

8. The introduction of such footage in family court, where Plaintiff's credibility and parental fitness were being adjudicated, further amplified the harm, humiliation, and powerlessness inflicted by the state.

9. These actions also violate VAWA (34 U.S.C. § 12291), which prohibits the misuse of public systems to retraumatize, degrade, or control survivors of gender-based violence.

10. As a direct result of Defendants' conduct, Plaintiff experienced severe emotional distress, reputational damage, humiliation, and interference with her constitutional and statutory rights to seek protection and participate in judicial proceedings without fear of retaliation.

## COUNT XXXIII: Violation of the Child Abuse Prevention and Treatment Act (CAPTA)

### 42 U.S.C. § 5101 et seq.; 42 U.S.C. § 5106a(b)(2); 42 U.S.C. § 1983

1.  Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2.  Plaintiff is the biological mother of minor children who made multiple disclosures of abuse, distress, and fear related to the conduct of their father, John Grissom, during ongoing custody proceedings.

3.  These disclosures were reported to Plaintiff, to the court, and to mandated reporters, including the Guardian ad Litem and Department of Human Resources officials, all of whom were acting under color of state law.

4.  Under CAPTA, states receiving federal funding must implement policies and procedures that give primary consideration to the safety of the child in custody and placement decisions, and must ensure timely, appropriate, and due process-compliant responses to reports of abuse and neglect. 42 U.S.C. § 5106a(b)(2).

5.  Defendants failed to meet these obligations. Instead of investigating or implementing protective measures, Defendants subjected Plaintiff and her minor children to forced psychological evaluations without a valid Rule 35 motion, hearing, evidentiary basis, or informed parental consent.

6.  These evaluations were conducted by Dr. Jack Carney, an evaluator with known ties to opposing counsel, under coercive and unethical conditions, in direct conflict with professional standards and federal child welfare protections.

7.  Psychological evaluations performed under threat or judicial coercion are not only ethically impermissible but are legally void when conducted without due process. See *Schlagenhauf v. Holder*, 379 U.S. 104, 118–20 (1964).

61

8.  CAPTA prohibits the use of coercive, retaliatory, or due process-deficient evaluations in child welfare determinations. Defendants used these evaluations to shape the evidentiary record and undermine Plaintiff's parental rights.

9.  These actions violated both the procedural protections owed to Plaintiff and the substantive safety interests of the children. The resulting reports, obtained under duress, corrupted the legal process and led to further retaliatory outcomes.

10. Defendants failed to enforce the statutory rebuttable presumption that custody or unsupervised visitation with a perpetrator of family violence is contrary to the best interests of the child, instead expanding John Grissom's access without requiring rehabilitation or safety guarantees.

11. Defendants delayed adjudication of Plaintiff's lawful relocation request for over twenty (20) months, during which time the children remained exposed to continued danger. Additional abuse disclosures occurred during this period, and the delay directly impeded Plaintiff's ability to secure a safe environment.

12. The Guardian ad Litem, Jason Spry, dismissed multiple disclosures of abuse, minimized risk to the children, and stated that "things would blow over in time," thereby abdicating his statutory responsibility under CAPTA to advocate for the best interests of the children.

13. The Department of Human Resources and Guardian ad Litem failed to conduct standard investigatory practices, including contacting collateral witnesses such as teachers, treating professionals, or extended family members. They instead relied exclusively on unverified statements from the opposing party.

14. Defendants compelled psychological evaluations of the children without valid legal process and used state funds to pay for those evaluations. The use of federal child welfare funds in this manner may constitute a misuse of CAPTA or Family Violence Prevention and Services Act (FVPSA) allocations. See 42 U.S.C. § 10401 et seq.

15. The court used the resulting evaluations—obtained through fear and coercion—to shape rulings that adversely impacted Plaintiff's custodial rights, family integrity, and safety, in violation of federal child protection mandates.

16. The court was repeatedly and specifically warned of the risk to the children and to Plaintiff by her legal counsel:

a. In November 2021, Attorney Brandon Brackin filed a written motion outlining the credible and imminent danger posed by John Grissom.

b. On March 22, 2023, Attorney Riley Powell submitted a written motion and oral argument stating: "This ruling places the mother and children in imminent danger of domestic abuse and is against the great weight of the evidence."

c. On July 26, 2023, Attorney Scott Tindle filed a Rule Nisi motion stating that "the mother and children are in emotional distress," and that "absent intervention by this Court, the mother fears they will suffer immediate and irreparable harm."

17. Despite this extensive and detailed record of risk, the court refused to act. Instead, it retaliated against Plaintiff for asserting protective parental rights and suppressed procedural objections.

18. These actions demonstrate a pattern of deliberate indifference to CAPTA's core mandates and reflect a systemic failure to protect minor children from foreseeable and preventable harm.

19. As a direct result, Plaintiff and her children suffered continued exposure to abuse, trauma, emotional distress, loss of legal protections, and irreparable damage to the parent-child bond.

20. Defendants' use of unlawful state authority to coerce minors into psychological evaluations, retaliate against protective parental conduct, and ignore substantiated abuse allegations constitutes a violation of the Child Abuse Prevention and Treatment Act and entitles Plaintiff to immediate injunctive relief and federal oversight.

## COUNT XXXIV: Americans with Disabilities Act (ADA) – Discrimination Based on Perceived Mental Health Disability, 42 U.S.C. § 12101 et seq.

1. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2. Plaintiff has been treated for ADHD and PTSD. She has never disclosed these diagnoses to the court or waived her privacy rights regarding medical information.

3. Defendants, acting under color of law, used information obtained through prior subpoenas—initiated by Plaintiff's ex-husband in unrelated proceedings—to allege mental health disability and misuse that information to justify coercive state action.

4. This included ordering psychological evaluations, denying Plaintiff access to those evaluations, and using their contents to penalize Plaintiff in custody and financial rulings—all without Plaintiff's informed consent or ability to respond.

5. Defendants also used Plaintiff's lawful use of prescribed ADHD medication as a basis to discredit her, implying instability and justifying drug testing, despite no evidence of abuse, diversion, or noncompliance.

6. These actions were taken without evidence that Plaintiff posed any danger to herself or others, and without any showing that her mental health condition impacted her parenting capacity or court participation.

7. Plaintiff was never given an opportunity to refute these assumptions, and the court failed to implement any reasonable accommodations or procedural safeguards before using these allegations to restrict her rights.

8. The ADA prohibits discrimination based on disability or perceived disability in access to public services, including courts and judicial procedures.

9. Defendants' conduct constitutes discrimination under 42 U.S.C. § 12132 and 28 C.F.R. § 35.130, as they denied Plaintiff full and equal access to proceedings and treated her disabilities as justification for adverse action without due process.

10. Plaintiff was deprived of privacy, parental rights, and procedural fairness on the basis of a perceived mental health condition, in violation of the ADA and Fourteenth Amendment.

11. These violations are ongoing and require immediate injunctive relief to prevent further harm and unlawful discrimination.

VII.    REQUEST FOR RELIEF

Plaintiff respectfully requests that this Court grant the following emergency and permanent relief:

1. A Temporary Restraining Order (TRO) immediately enjoining Baldwin County, its judiciary, court-appointed officials, and law enforcement agencies from enforcing any orders, contempt findings, warrants, evaluations, financial penalties, or other rulings issued after February 23, 2024, or in violation of Plaintiff's constitutional rights.

2. A stay of all state-court proceedings related to Plaintiff and her minor children, including enforcement of custody, visitation, psychological evaluations, relocation restrictions, and contempt actions, pending adjudication of this federal action.

3. A permanent injunction prohibiting Defendants from asserting jurisdiction or continuing legal proceedings against Plaintiff or her children in contravention of federal law, including any future enforcement of psychological evaluations, drug testing, arrest warrants, bond conditions, or orders issued without jurisdiction or due process.

4. A declaration that Baldwin County, Alabama has forfeited jurisdiction over Plaintiff's custody, contempt, and enforcement matters due to its ongoing and systemic violations of the U.S. Constitution, the Violence Against Women Act (VAWA), the Child Abuse Prevention and Treatment Act (CAPTA), the Family Violence Prevention and Services Act (FVPSA), the Americans with Disabilities Act (ADA), the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), and the Parental Kidnapping Prevention Act (PKPA).

5. An order vacating all state court rulings, findings, or enforcement actions issued in violation of Plaintiff's rights or after jurisdiction was lost under Rule 60(b)(3), including those involving court-ordered evaluations, contempt proceedings, arrest warrants, or forced drug testing.

6. An order requiring the immediate return of any funds paid in connection with unlawful arrest, including but not limited to the $1,500 cash-only alias contempt bond, the $1,085 "eluding" bond, and any coerced fines or fees mischaracterized as "child support" or administrative penalties; and restitution for all costs associated with Plaintiff's unconstitutional detention, transportation, and release.

7. A mandate transferring temporary jurisdiction under the UCCJEA to a neutral and lawful venue for custody adjudication pending full federal review.

8. Referral of this matter to appropriate federal oversight agencies, including:

   a. The U.S. Department of Justice Civil Rights Division, for violations of 42 U.S.C. § 1983 and ongoing retaliation against a domestic violence survivor;

   b. The Office on Violence Against Women, for Baldwin County's systemic noncompliance with VAWA;

   c. The U.S. Department of Health and Human Services, for violations of CAPTA and FVPSA, including misuse of federally funded services to coerce psychological evaluations of children without consent or due process.

9. Any further relief this Court deems just and proper to prevent continued constitutional violations, irreparable harm, and systemic abuse of state power.

10. Plaintiff expressly reserves the right to seek compensatory damages and additional relief at a later stage of these proceedings.

VIII.    NOTICE TO DEFENDANTS AND REQUEST TO WAIVE BOND

Plaintiff will provide notice to Defendants as required by Rule 65(b)(1). However, in light of Defendants' established pattern of retaliation, obstruction, and procedural abuse, Plaintiff

respectfully requests that the Court waive the notice requirement for purposes of issuing

emergency injunctive relief. Plaintiff further requests that the Court waive any bond requirement

under Rule 65(c) in consideration of her indigent status and the strong public interest in

preventing further constitutional injury. See *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d

1171, 1176 (6th Cir. 1995).

IX.     CONCLUSION

Baldwin County and its officials have carried out a sustained campaign of unconstitutional

retaliation, judicial misconduct, and abuse of state power against a domestic violence survivor

and her children. The enforcement of void orders, the use of coercive custody tactics, and the

repeated denial of jurisdiction and due process violate the most basic principles of constitutional

law. No state or court may act without jurisdiction, and no government official may strip a

litigant of liberty, dignity, and family integrity without legal basis.

The irreparable harm inflicted upon Plaintiff and her children includes psychological trauma,

loss of familial relationships, reputational injury, and deprivation of fundamental constitutional

rights—none of which can be remedied through monetary damages alone. *Doe v. Mundy*, 514

F.2d 1179, 1184 (D.C. Cir. 1975) and *Sampson v. Murray*, 415 U.S. 61, 88 (1974) affirm that

family separation, retaliation, and psychological harm constitute irreparable injury.

Plaintiff has exhausted every available state remedy and has been met only with obstruction,

harm, and further retaliation. Immediate federal intervention is not only justified—it is required.

Under *Pulliam v. Allen*, 466 U.S. 522 (1984), federal courts possess the authority to enjoin state

actors who engage in ongoing constitutional violations. Accordingly, Plaintiff respectfully

requests that this Court issue a Temporary Restraining Order, grant preliminary and permanent

injunctive relief, stay all state actions, and take jurisdiction over this matter to prevent further constitutional harm.

## X.    INCORPORATION AND RESERVATION OF RIGHTS

Plaintiff hereby incorporates by reference all allegations, exhibits, and legal arguments submitted in support of her Emergency Motion for Temporary Restraining Order (TRO), filed on March 19, 2025, under Case number 1:25-cv-00895-RTG, including any supplemental declarations and materials filed thereafter. These filings are part of the record in support of this Verified Complaint. The relief sought herein supplements and expands upon the prior TRO request and is intended to preserve Plaintiff's rights, safety, and access to a lawful judicial forum pending full adjudication on the merits.

Plaintiff reserves the right to amend this Complaint to include additional parties, causes of action, and supporting exhibits pursuant to Federal Rule of Civil Procedure 15. Plaintiff further reserves the right to seek compensatory, statutory, and punitive damages, as well as all other legal and equitable relief available under federal law and 42 U.S.C. § 1983, at the appropriate stage of proceedings.

## XI.    EXHIBITS AND EVIDENTIARY MATERIALS

Plaintiff has compiled a substantial volume of documentary evidence, sworn declarations, certified court records, and audio/video materials in support of the claims alleged herein. This evidentiary material substantiates ongoing constitutional violations, judicial bias, procedural misconduct, retaliatory enforcement actions, and resulting harm to Plaintiff and her minor children.

Due to the volume and scope of relevant materials—and in light of Plaintiff's pro se status and pending in forma pauperis application—Plaintiff respectfully notifies the Court that supporting exhibits will be filed in sequential parts or upon leave of Court. Plaintiff reserves the right to submit a formal evidentiary appendix or to file exhibits in support of a memorandum of law, supplemental affidavit, or further motion for injunctive relief.

Pursuant to Rule 10(c) and applicable local rules governing voluminous filings, Plaintiff intends to submit exhibits as individual attachments or grouped by topic. Not all exhibits are attached to this Complaint due to the emergency nature of the filing. A complete citation-matched appendix will be filed as soon as practicable.

Plaintiff respectfully requests that the Court take judicial notice of all court filings, hearing transcripts, and records referenced herein, and reserves the right to supplement this record with additional supporting materials, affidavits, and documentary evidence as necessary.

Respectfully submitted,

*Sarah Grissom*

**Sarah Grissom**
Pro Se Plaintiff
6 Quail Run Drive
Charleston, IL 61920
grissomsarah22@gmail.com
(217) 345-0615

Dated: April 2, 2025

**AFFIDAVIT OF VERIFICATION**
**Pursuant to 28 U.S.C. § 1746**

I, **Sarah Grissom**, under penalty of perjury, state as follows:

1. I am the Plaintiff in the above-captioned matter and am competent to testify to the matters set forth herein.
2. I have reviewed the attached Verified Complaint and accompanying filings submitted in this case.
3. To the best of my knowledge, information, and belief, the factual allegations contained in the Verified Complaint and related pleadings are true and correct, except where stated to be made on information and belief, and as to those allegations, I believe them to be true based on the evidence, records, and experience available to me.
4. I submit this affidavit in support of my request for injunctive relief and to verify the claims presented under penalty of perjury.

Executed this 2nd day of April, 2025.

Respectfully submitted,

*Sarah Grissom*

**Sarah Grissom**
Plaintiff, pro se
6 Quail Run Drive
Charleston, IL 61920
grissomsarah22@gmail.com
(217) 345-0615

**Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.**